HEARD NOVEMBER TERM, 1877.

## The State *vs.* Wimbush.

A warrant issued upon a statement of facts not sworn to is unconstitutional, null and void.

It is not unlawful to resist an officer attempting to arrest one under an illegal warrant.

Before COOKE, J., at Abbeville, May Term, 1877.

This was an indictment against Jesse Wimbush and Cyrus Wimbush for resisting a Constable in the discharge of his duty. They were found guilty and appealed.

The case upon which the appeal was heard is as follows :

Henry M. Young, a witness for the prosecution, testified : That he issued two search warrants to search the dwelling houses and other buildings of the above named defendants and others, and warrants to arrest the above named defendants and others ; that this was the first case in which he had acted as Trial Justice ; that the information on which the search warrants were issued was reduced to writing by him and signed by the parties giving it, and that he knew the search warrants produced in Court to be the original warrants issued by him, and the papers offered in evidence by the prosecution as the information on which the search warrants were issued to be the information which he reduced to writing and on which he issued the search warrants aforesaid, copies of which information and warrants are as follows :

Due West, S. C., April 5, 1877.

Personally appeared before me J. D. Brownlee, and says that he has reason to believe that the bacon stolen from him on the night

of the 23d of March was taken by Ned Wimbush, Jesse Wimbush, J. C. Wimbush and B. L. Young.

J. D. BROWNLEE.

STATE OF SOUTH CAROLINA, } 
    *Abbeville County.*

By Henry M. Young, Trial Justice in and for the said State.

*To the Sheriff or my Special Constable of said County :*

Whereas complaint upon oath has been made unto me by J. D. Brownlee that a lot of bacon has been feloniously taken, stolen and carried away out of his house, and that he has cause to suspect, and does suspect, that the bacon, or a part thereof, is concealed on the premises of Ned Wimbush, Jesse Wimbush, Cyrus Wimbush and B. L. Young: These are, therefore, to authorize and require you, with necessary and proper assistance, to enter into the said dwelling houses and other buildings of the aforesaid parties, and there to search for the said goods, and if the same or any part thereof shall be found, that you bring the goods so found, and also the bodies of the above named parties, before me, to be dealt with according to law.

Given under my hand and seal this fifth day of April, 1877.

HENRY M. YOUNG, [L. S.]<br>Trial Justice.

DUE WEST, S. C., April 5, 1877.

Personally appeared before me W. M. Grier, and says that he has reason to believe that three bushels of corn and grist, stolen from him on the night of 23d March, was taken by Cyrus Wimbush, Jesse Wimbush, B. L. Young and Wilson Cowan.

W. M. GRIER.

STATE OF SOUTH CAROLINA, } 
    *Abbeville County.*

By H. M. Young, Trial Justice in and for said State.

*To the Sheriff or my Special Constable of said County :*

Whereas complaint upon oath has been made to me by W. M. Grier that a lot of corn and grist has been feloniously taken, stolen and carried away out of his crib, and that he has cause to suspect, and does suspect, that the corn and grist, or a part thereof, is concealed on the premises of Cyrus Wimbush, Jesse Wimbush, B. L. Young and Wilson Cowan: These are, therefore, to authorize and re-

quire you, with necessary and proper assistance, to enter into the said dwelling houses and other buildings of the above named parties, and there to search for the said goods, and if the same or any part thereof shall be found, that you bring the goods so found, and also the bodies of the above named parties, before me, to be dealt with according to law.

H. M. YOUNG, [L. S.]
Trial Justice.

George W. Bell, a witness for the prosecution, testified that no authority was given to him in writing to execute the warrants, but that the warrants were delivered to him by Henry M. Young, who swore witness to execute the same.

M. G. Zeigler, Esq., Clerk of the Circuit Court for Abbeville County, testified that Henry M. Young had not at any time prior to the trial subscribed before and filed with him any oath of office.

It was proved that the defendants and the other parties named in the two search warrants are all heads of families occupying separate houses, and that the house of B. L. Young is a half mile from those of the other parties.

Defendants' counsel requested His Honor the presiding Judge to charge the jury as follows:

1. That Henry M. Young was not a Trial Justice, and had no authority to issue a warrant, because he did not subscribe and file with the Clerk of the Court, before entering upon the duties of his office, the oath required to be taken on page 194, Section 6, of the Revised Statutes, which is a prerequisite to his exercising the duties of such office.

2. That, assuming Young to be a legal Trial Justice, the acting Constable was not a legal officer, because he was neither a regularly-elected bonded Constable, nor specially appointed in writing for that case, as required by Section 2, page 205, of the Revised Statutes.

3. That, assuming Young to be a legal Trial Justice, and Bell to be a legal Constable, there was no certain definite information on which to issue a search warrant.

4. That the warrant is a general search warrant, and is, therefore, prohibited by the Bill of Rights. Search warrants can only issue upon information on oath that certain specific property has been stolen, and that it is concealed in a particular place named in the

affidavit, and the affidavit must set forth reasons for the suspicion that the property is in that place.

5. That in order to constitute a riot three or more persons must have assembled to commit an unlawful act, and must have actually committed some unlawful act.

His Honor refused to instruct the jury as requested, overruling all the points of law made by defendants' counsel, who thereupon filed the following exception :

This His Honor said in his charge—

That the validity of the commissions and the legality of the proceeding were only collaterally involved, and that in the interest of the public justice and the public peace he would overrule all the points of law made by defendants, and that, whether the process was void or not, the defendants did not know it, and therefore could not avail themselves of it.

Please take notice that the defendants appeal to the Supreme Court from the verdict and judgment in the above stated case on the following grounds :

Because His Honor Judge J. P. Reed refused to charge the jury, as requested by defendants' counsel, in the following particulars :

1. That Henry M. Young was not a Trial Justice and had no authority to issue a warrant, because he did not subscribe and file with the Clerk of the Court, before entering upon the duties of his office and before issuing the warrant in this case, the oath required to be taken on page 194, Section 6, of the Revised Statutes, which is a prerequisite to his exercising the duties of such office.

2. That, assuming Young to be a legal Trial Justice, the acting Constable was not a legal officer, because he was neither a regularly-elected bonded Constable, nor specially appointed in writing in that case, as required by Section 2, page 205, of the Revised Statutes.

3. That, assuming Young to be a legal Trial Justice and Bell to be a legal Constable, there was no certain, definite information on which to issue a search warrant.

4. That the warrant is a general search warrant, and, is, therefore, prohibited by the Bill of Rights. Search warrants can only issue upon information on oath that certain specific property has been stolen and that it is concealed in a particular place named in the affidavit, and the affidavit must set forth reasons for the sus-

picion that the property is in that place. And that His Honor said, in his charge to the jury, "the validity of the commissions and the legality of the proceedings are only collaterally involved, and in the interests of the public justice and the public peace I shall overrule them all [the points of law made by defendants' counsel]; and that, whether the process was void or not, the defendants did not know it, and, therefore, could not avail themselves of it," which was duly excepted to by defendants' counsel before the case went to the jury.

*Burt & Graydon,* for appellants:

1. If Bell was not a Constable, the appellants were improperly convicted of resisting his endeavors to enter the house of Jesse Wimbush.

2. Bell claimed to be a Constable, not by election, but by appointment of Young, as Trial Justice, under the *proviso* "that nothing herein contained shall prevent a presiding Judge or a Trial Justice from appointing a Constable to act by virtue of such appointment only on a particular occasion to be specified in writing."— Rev. Stat., Ch. XXVI, § 2, p. 205.

3. If Young was not a Trial Justice, it follows that he could not appoint a Constable, and that Bell was not a public officer, and the appellants should not have been convicted.

4. In the Revised Statutes (Chapter XXV, page 194,) the Governor is authorized to appoint Trial Justices with the consent of the Senate and in the vacation of the Senate; and Section 6 prescribes that "on receiving such commissions, and before entering upon the duties of their offices, such Trial Justices shall take and subscribe before the Clerk of the Court of their respective Counties the oath required by the Constitution, and file the same in his office, unless in Counties in which the Clerk is not qualified according to law," &c.

5. The issuing of the warrant against the appellants was Mr. Young's first official act as Trial Justice, and he had not taken the requisite oath at the trial of appellants.

6. In the case of *The State* vs. *Heyward* (1 N. & McC., 566,) it was held that perjury could not be assigned of an oath taken before a Justice who had himself not taken the oath of office before the officer designated by the statute, although he had taken it before another.

7. Assuming that Young was a Trial Justice and could have appointed Bell a Constable to execute the search warrant, the appointment was not made in the manner prescribed by the statute.

8. His appointment was not in writing, nor was the act to be done by Bell specified in writing—his name does not appear on the face of the warrant nor on its back. It was directed "To the Sheriff or my Special Constable," and delivered by Young to Bell, the prosecutor.

9. The warrant should be directed to a Constable or other public officer.—2 Hale P. C., 250; 1 Chil. C. L., 65.

10. Assuming, however, that Bell was a Constable, the warrant is void, not being founded upon such information as the law requires.

11. Article 4, Amendments to the Constitution of the United States, is: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

12. Section 22 of Article I of the Constitution of South Carolina is substantially the same, with the further provision, "and no warrant shall be issued but in the cases and with the formalities prescribed by the laws."

13. "Search warrants are not to be granted without oath made before a Justice that a felony has been committed, and that the party complaining hath probable cause to suspect they [the stolen goods] are in such a place or house, and to show his reasons for such suspicion."—2 Hale P. C., 150.

14. A specification of the goods stolen and the place of their concealment must appear in the information and in the search warrant.—*Bell* vs. *Clapp*, 10 Johns., 263; *Sandford* vs. *Nicholls*, 13 Mass., 286; Constitution United States; Constitution South Carolina, *ut supra*.

15. The recitals in the warrants were not the facts sworn by the owners of the goods alleged to have been stolen, as the Trial Justice testified, and do not embody the information on which the search warrants were issued. The testimony of the Trial Justice is that they were issued on the information contained in the writing signed by Brownlee and Grier.

16. In the case of *The State* vs. *Killitt* (2 Bail., 290,) the Court says: "It is not deemed indispensable that the information for a warrant [of arrest] should be on oath or in writing. But as the grounds of the proceeding are exhibited by the Magistrate they will be reviewed by the Court, and, seeing that the only foundation of the charge is the oath of one not competent to testify, the prisoner ought not to be detained in confinement."

17. The warrant is defective and void, if otherwise valid, because it does not "particularly describe the place to be searched."

18. The word "premises" is indefinite. It may mean a house, but it may mean lands or tenements.

19. The appellants had no premises or house in common. Each had his own house apart from the others.

20. If the warrant be defective in itself, or if not enforced by a proper officer, the party may legally resist its enforcement.—1 Chit. Cr. L., 61, and cases cited in note thereto.

21. That the information on which the warrants were issued was for warrants of arrest and not for search warrants.

*Cothran*, Solicitor, contra.

March 12, 1878. The opinion of the Court was delivered by

HASKELL, A. J. The indiscriminate issuing of search warrants is an abuse of power guarded against by the Constitution of the United States and of this State; while, on the other hand, the proper exercise of the power is both lawful and essential. By Article IV of amendments to the Constitution of the United States, "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the *persons* or things to be seized." The Constitution of South Carolina, Article I, Section 22, in the declaration of rights, is equally explicit, and absolutely prescribes that "all warrants shall be supported by oath or affirmation, * * * and no warrant shall be issued but in the cases and with the formalities prescribed by the laws."

General Statutes, p. 196, Section 16, directs that "all proceedings before Trial Justices in criminal cases shall be commenced on information under oath, plainly and substantially setting forth the

offense charged, upon which, and only which, shall a warrant of arrest issue."

In this case the testimony of the Trial Justice who issued the warrants of search and arrest clearly shows that the information on which the warrants were founded was not given upon oath, as alleged in the warrant, but consisted of a mere statement in writing, not sworn to.

In *Ex parte Burford*, (3 Cra., 447,) the case came by *habeas corpus* before the Supreme Court of the United States.

The prisoner had been committed to jail " by a warrant under the hands and seals of Johan Thompson and ten other Justices of the Peace."

" The Judges of the Supreme Court were unanimously of the opinion that the warrant of commitment was illegal for want of stating *some good cause certain, supported by oath*," and the prisoner was discharged.

The only difference in the cases is that in the one the error was patent on the face of the warrant; in the other, this case, it is proved by the testimony of the Trial Justice. There is no real difference, and the rules of law apply with equal force to each.

This warrant of search and seizure, not being " supported by oath or affirmation," is clearly illegal, and, therefore, is not of any legal force. It is needless to go into the other questions of the want of particular and specific designations of person and place in the information and in the warrant, nor is it necessary to pass upon the qualification of these *de facto* officers.

It only remains to inquire into the points raised by the Circuit Judge in his charge to the jury, " that the validity of the commissions and the legality of the proceedings were only collaterally involved, and that in the interest of the public justice and the public peace he would overrule all the points of law made by the defendants." This language is too strong and may be construed to mean that a Judge may sometimes overrule what is law for purposes of public policy.

If, however, the meaning be that the legality of a process is immaterial, or that an illegal process may not be lawfully resisted, it is still erroneous. "Even a forcible resistance of an arrest may be defended if it appear not that the arrest was lawful, and a third person may interfere to prevent an illegal capture if he do no more

than is necessary for that purpose."—Per Wardlaw, J., in *The State* vs. *Harley*, 2 Strob., 73.

In *Rex* vs. *Osmer*, (5 East.,) Lord Ellenborough, C. J., said: "If a man without authority attempt to arrest another illegally, it is a breach of the peace, and any other person may lawfully interfere to prevent it."

Defect in the authority of the Court, as in this case, is more fatal than the defect by reason of error on the face of the process. The Court had no power or authority to issue the process without information under oath, and without that information its process was no process, and to resist it was not an offense.

The instruction of the jury concludes as follows: "That, whether the process was void or not, the defendants did not know it, and, therefore, could not avail themselves of it." This is a violent presumption of fact and of law which cannot be permitted. There is no evidence that the defendants "did not know it;" and if there had been, that was a question of fact for the jury; and if they did not know it, there is no difference; for it is proved that it was not a lawful process, and there the case must fail, for the defendants are indicted for resisting a public officer in the execution of a lawful process. In addition to this, it is an unfortunate use of words. In the eye of the law "every man is presumed to be cognizant of the statute law of this realm and to construe it aright, and if any individual should infringe it through ignorance he must, nevertheless, abide by the consequences of his error. It will not be competent to him to aver in a Court of justice that he has mistaken the law, this being a plea which no Court of justice is at liberty to receive."—Brown's Legal Max., 265.

A Court which is bound to presume knowledge to inflict upon the accused a penalty which the law imposes cannot presume ignorance to deprive him of a protection which the law confers, much less can defendant's ignorance of any law constitute an act or crime when the law says it is not a crime.

The motion for a new trial is granted.

*Willard*, C. J., and *McIver*, A. J., concurred.