## A98A2270. LEWIS v. THE STATE.
(508 SE2d 218)

ELDRIDGE, Judge.

Appellant Marvin Lewis, a/k/a Mark Lewis, appeals from his July 1997 convictions for possession of a firearm by a convicted felon, possession of cocaine and marijuana with intent to distribute, and unlawful possession of fireworks. We affirm the convictions.

Viewed in the light most favorable to the verdict, the facts are as follows: In April 1995, law enforcement agents from the Georgia Governor's Strike Force ("Strike Force") conducted at least two controlled buys of cocaine at Mary's Convenience Store in Dawson, Georgia. In so doing, the agents acted on a tip from a reliable confidential informant ("CI") that Lewis was selling drugs from the store. The case agent in charge of the Strike Force operation, David Sims, then filed an affidavit with the Terrell County Magistrate Court and obtained a

search warrant for the convenience store. During the search of the store, the agents found several hundred dollars in cash and several plastic bags of crack cocaine and marijuana. In Lewis' Chevy Suburban vehicle, which was parked in the store's parking lot, agents found substantial cash, several rocks of crack cocaine, and a semi-automatic pistol with ammunition.

The agents arrested Lewis and advised him of his *Miranda*[1] rights. Following such warnings, Lewis admitted that he had a shotgun stored at his home and that he was a convicted felon; Lewis had been convicted of armed robbery and aggravated assault in December 1981. Asserting that Lewis was violating OCGA § 16-11-131, possession of a firearm by a convicted felon, the agents secured a search warrant for Lewis' home. During the search, agents found several bullets, shotgun shells, empty gun casings, and empty ziplock bags.

A jury convicted Lewis on all counts in July 1997. He appeals. *Held*:

1. In his first enumeration of error, Lewis asserts that the trial court erred in failing to suppress evidence obtained pursuant to the search warrant for the convenience store. Specifically, Lewis claims that the search warrant was based on hearsay, because the officer who signed the underlying affidavit had no personal knowledge concerning the CI involved in the controlled buys at the store.

(a) Initially, Lewis asserts that the affidavit failed to meet the multi-pronged reliability test of *Aguilar v. Texas*, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) (1964). See also *Dailey v. State*, 136 Ga. App. 866 (1) (222 SE2d 682) (1975). However, this test has now been supplanted by the more lenient "totality of the circumstances" test enunciated in *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), and adopted by Georgia's courts in *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984). See *State v. Smith*, 201 Ga. App. 650, 651 (411 SE2d 877) (1991). "The requirements of the *Gates* analysis are near equivalents to those traditionally applied by the courts of our state. Probable cause means reasonable grounds, and is that apparent state of facts which seems to exist after reasonable and proper inquiry. . . . By no means is probable cause to be equated with proof by even so much as a preponderance of evidence. As stated in *Gates*, [p]robable cause does not demand the certainty we associate with formal trials." (Citations and punctuation omitted.) *State v. Stephens*, supra at 182, 184. In making a determination as to probable cause pursuant to a totality of the circumstances test, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affida-

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

vit before him, including the veracity and basis of knowledge of [the person] supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found at a particular place. The task of a reviewing court is to determine if there is substantial evidence in the record to support the magistrate's issuance of the warrant." (Citations and punctuation omitted.) *Hand v. State,* 206 Ga. App. 501, 502-503 (3) (426 SE2d 18) (1992). See also *State v. Stephens,* supra at 182; *McConville v. State,* 228 Ga. App. 463, 466-467 (2) (491 SE2d 900) (1997); *Gibson v. State,* 223 Ga. App. 103, 104 (3) (476 SE2d 863) (1996); *Tackett v. State,* 211 Ga. App. 664, 666 (2) (440 SE2d 74) (1994); *Bullock v. State,* 195 Ga. App. 37, 38 (392 SE2d 534) (1990).

In this case, Agent David Sims, the case agent in charge of the investigation of alleged drug sales by Lewis, signed an affidavit which showed the following: Terrell County Sheriff J. Bowens received information from a CI that Lewis was selling cocaine from Mary's Convenience Store. According to the affidavit, "[t]he CI has been personally known to Sheriff J. Bowens for over twenty (20) years. The CI has provided information to Sheriff J. Bowens in the past which has led to at least one (1) arrest and conviction for possession of cocaine and at least one (1) search warrant execution. For the above reasons, the information provided to the agents by the CI is believed by your affiant to be reliable." Sheriff Bowens reported the CI's information to Strike Force agents working with Agent Sims. Strike Force agents met with the CI and arranged for at least two controlled buys. Prior to such buys, the agents equipped the CI with an audio transmitting device, so that they could monitor the transactions. The CI was searched, and no illegal substances were found. The agents gave the CI $20 in official state funds and transported him to Mary's Convenience Store. The agents observed the CI from the time he went into the store until he emerged, minutes later, with crack cocaine; the CI reported that he had purchased the cocaine from Lewis. The agents reported this information to Agent Sims, who then secured a search warrant.

Under the facts of this case, there was more than sufficient information in the affidavit to establish probable cause for the warrant, and the trial court correctly denied Lewis' motion to suppress. Further, even if the CI had no known credibility, the two controlled buys under the observation of the agents, alone, would have been sufficient to establish probable cause.

(b) Further, Lewis' claim that the warrant was based upon "double layered hearsay" is also without merit. "The fact that there was 'hearsay upon hearsay' involved in the present case, as far as the information upon which the affidavit was based is concerned, does not preclude a finding of probable cause. It is evident from the tran-

script of the testimony that the informant gave the tip to the police. It is immaterial which policeman received the tip. Observations by fellow officers of government engaged in a common investigation are a reliable basis for a warrant applied for by one of their number." (Punctuation omitted.) *McNeal v. State*, 133 Ga. App. 225, 228 (2) (211 SE2d 173) (1974). See also *United States v. Ventresca*, 380 U. S. 102, 110 (85 SC 741, 13 LE2d 684) (1965). "Moreover, it was not essential that the detective and the informant appear before the magistrate. The rule in Georgia has been that an affidavit supporting a search warrant may be based on hearsay information as long as there is a substantial basis for crediting the hearsay." (Citations and punctuation omitted.) *Deal v. State*, 199 Ga. App. 184, 185 (1) (404 SE2d 343) (1991). Under the circumstances of this case, there was no error.

2. Further, Lewis' assertion that the evidence found at his home was "fruit of the poisonous tree," because it was based on Lewis' admissions following the allegedly illegal search of the store and his resultant arrest, fails in light of our decision in Division 1, supra.

3. In his next enumeration, Lewis alleges that evidence of his May 1996 guilty plea in Florida for conspiracy to distribute at least 400 grams of cocaine should not have been admitted as a similar transaction.

(a) Under the Supreme Court of Georgia's ruling in *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991), before any evidence of independent offenses may be admitted, a hearing must be held pursuant to Uniform Superior Court Rule 31.3 (B). At that hearing, the State must make three showings, to wit: (1) that the defendant committed the acts in question; (2) that the similar acts were being introduced for an appropriate purpose; and (3) that these acts were sufficiently similar to the offense for which the defendant is charged, so that proof of the former tends to prove the latter. *Scott v. State*, 219 Ga. App. 906, 908 (3) (467 SE2d 348) (1996); see also *Chastain v. State*, 260 Ga. 789, 790-791 (400 SE2d 329) (1991). "While Uniform Superior Court Rule 31.3 speaks of 'similar' transactions, the issue of admissibility of extrinsic transactions has never been one of 'mere similarity.' *Williams v. State*, 251 Ga. 749, 784 (312 SE2d 40) (1983). It is, rather, relevance to the issues in the trial of the case. A logical connection between separate crimes is established where proof of the independent crime tends to establish identity, bent of mind, or intent in the commission of the crime for which the defendant is on trial." (Citations and punctuation omitted.) *King v. State*, 214 Ga. App. 311, 315 (5) (447 SE2d 645) (1994).

In this case, Lewis does not challenge identity, i.e., he admits that he was, in fact, the same person who pled guilty to conspiracy to traffic cocaine in Florida on May 10, 1996. Further, he does not con-

test the trial court's determination that the evidence could demonstrate identity, bent of mind, common scheme, and intent. Instead, he asserts that the prior conspiracy offense is insufficiently similar to the possession offenses in this case to satisfy the test under *Williams v. State*, 261 Ga. 640. We disagree.

At the Rule 31.3 (B) hearing on July 25, 1997, the State showed that Lewis had been charged with conspiracy to traffic cocaine after he was recorded, via a wiretap, arranging for the delivery of a large quantity of cocaine in Miami. According to the State, Lewis contacted a suspected drug dealer and negotiated the price and quantity of more than 400 grams of cocaine. After Lewis was arrested, he cooperated with Florida investigators and admitted that he had been going to Florida repeatedly to purchase cocaine, which was then brought to Dawson, Georgia, to be sold from Mary's Convenience Store. As such, the State demonstrated that Lewis' criminal acts in Florida were "all part of the same or similar transaction," i.e., the acquisition of cocaine in Florida prior to its distribution in Georgia.[2] Based upon this argument, the trial court permitted the State to present the Florida guilty plea to demonstrate identity, bent of mind, common scheme, and intent, following proper limiting instructions by the court. Under the facts of this case, there was no error in the trial court's decision to permit the introduction of the Florida guilty plea as a similar transaction.

(b) Lewis also asserts that the Florida transaction should have been excluded because it occurred in December 1995, several months *after* the crimes at issue in this case. However, this Court has previously held that similar transactions which occur subsequent to the charge for which the defendant is being tried are admissible as long as the State demonstrates that the transaction satisfies the test under *Williams*, 261 Ga. 640. *Scott v. State*, supra at 908 (3). Accordingly, there was no error.

4. In his final enumeration of error, Lewis asserts that the trial court erred in admitting evidence of his 1981 guilty plea for armed robbery, claiming that there was insufficient evidence at trial to positively identify him as the perpetrator of the previous crime. During its case in chief, the State presented a certified copy of a September 1981 guilty plea of "Marvin Lewis."

Lewis "presented no evidence contradicting that he was the person named in the [1981] documents. Concordance of name alone is some evidence of identity. [OCGA § 24-4-40 (a).] Further, in the absence of any denial by [Lewis] and no proof to the contrary[,] this

---

[2] Notably, at the sentencing hearing on August 4, 1997, defense counsel admitted that the Florida arrest arose from a "single common scheme or plan . . . the same set of conduct [during] a bad chapter in Mr. Lewis' life."

concordance of name is sufficient to show that [Lewis] and the individual previously convicted were the same person. Accordingly, this enumeration is without merit." (Citations and punctuation omitted.) *Glass v. State*, 181 Ga. App. 448 (1) (352 SE2d 642) (1987). See also *Johnson v. State*, 233 Ga. App. 301 (504 SE2d 8) (1998); *Hill v. State*, 162 Ga. App. 637-638 (2) (292 SE2d 512) (1982).

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 26, 1998.

*Collier & Gamble, Wilbur T. Gamble III*, for appellant.
*Charles M. Ferguson, District Attorney*, for appellee.