581 S.E.2d 840

The STATE, Respondent,

v.

**Michael DUNBAR, Appellant.**

No. 3631.

Court of Appeals of South Carolina.

Heard Sept. 11, 2002.
Decided April 21, 2003.
Rehearing Denied June 26, 2003.

480

Assistant Appellate Defender Tara S. Taggart, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Donald V. Myers, of Lexington, for respondent.

CONNOR, J.

Michael Dunbar was indicted for trafficking in cocaine 100 to 200 grams, trafficking in cocaine 200 to 400 grams, and trafficking in crack cocaine 200 to 400 grams. A jury convicted Dunbar of all three charges. The trial court sentenced him to concurrent twenty-five-year sentences for the trafficking in cocaine offenses, and a consecutive fifteen-year sentence for trafficking in crack cocaine. Dunbar appeals, arguing the trial court erred in failing to suppress evidence obtained as a result of two allegedly impermissible searches. We affirm in part and reverse in part.

## FACTS

Acting on information from a confidential informant, investigators from the Lexington County Sheriff's Department initiated an undercover drug bust. In Officer Rainwater's presence, the informant contacted Dunbar and another individual to set up a drug transaction. The informant arranged to purchase five ounces of cocaine. The two men arrived in their car to meet the informant and deliver the drugs at the pre-designated time and place.

Police officers approached the car upon receiving the informant's signal that drugs were present in the vehicle. The driver of the vehicle, Jonathan Small, fled on foot. The defendant, Dunbar, remained seated in the vehicle until the officers asked him to step out. The officers searched the car and found a paper bag containing approximately five ounces of cocaine. The officers also noticed a hotel room key on the key chain left in the car's ignition. Dunbar informed Rainwater that he and Small were staying at the Ramada Inn in West Columbia.

Rainwater sought a warrant to search the hotel room. The search of the room turned up $3,795.00 in cash, digital scales, a 9-millimeter pistol, powder cocaine, and crack cocaine.

Prior to trial, Dunbar moved to suppress the evidence obtained as a result of the warrantless search of the car and the search of the hotel room pursuant to the execution of the search warrant. The trial court denied Dunbar's motion to suppress the evidence. This appeal follows.

## LAW/ANALYSIS

### I. Warrantless Search of Vehicle

Dunbar argues the trial court erred in failing to suppress the cocaine found in the vehicle because it was obtained as a result of an unreasonable warrantless search.

Generally, warrantless searches are per se unreasonable unless an exception to the warrant requirement is present. *State v. Peters,* 271 S.C. 498, 248 S.E.2d 475 (1978). Recognized exceptions to the warrant requirement include: (1) a search incident to a lawful arrest; (2) "hot pursuit"; (3) stop and frisk; (4) automobile exceptions; (5) the "plain view" doctrine; and (6) consent. *State v. Bailey,* 276 S.C. 32, 274 S.E.2d 913 (1981). Dunbar argues the warrantless search of the vehicle was not pursuant to any of the possible exceptions.

As noted, one possible exception to the warrant requirement is a search incident to a lawful arrest. Once probable cause exists for an arrest, "[p]olice officers may make a search of an arrestee's person and the area within his immediate control for weapons and destructible evidence." *State v. Ferrell,* 274 S.C. 401, 405, 266 S.E.2d 869, 871 (1980). Dunbar's motion to suppress the evidence stated his "arrest was made absent probable cause." Thus, we focus on whether probable cause existed to arrest Dunbar.

"The fundamental question in determining whether an arrest is lawful is whether there was 'probable cause' to make the arrest." *Wortman v. City of Spartanburg,* 310 S.C. 1, 4, 425 S.E.2d 18, 20 (1992). Probable cause for an arrest "generally exists 'where the facts and circumstances within the arresting officer's knowledge are sufficient for a reasonable person to believe that a crime has been or is being committed by the person to be arrested.'" *State v. Moultrie,* 316 S.C. 547, 552, 451 S.E.2d 34, 37 (Ct.App.1994) (quoting *United States v. Miller,* 925 F.2d 695, 698 (4th Cir.1991)). Stated otherwise, "[a] police officer has probable cause to arrest without a warrant where he, 'in good faith, believes that a person is guilty of a felony, and his belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise....'" *State v. Roper,* 274 S.C. 14, 17, 260 S.E.2d 705, 706 (1979) (quoting

*State v. Swilling,* 249 S.C. 541, 558, 155 S.E.2d 607, 617 (1967)).

██ In determining whether probable cause exists, "all the evidence within the arresting officer's knowledge may be considered, including the details observed while responding to information received." *Roper,* 274 S.C. at 17, 260 S.E.2d at 706; *see Moultrie,* 316 S.C. at 552, 451 S.E.2d at 37 ("In assessing whether an officer has probable cause, the totality of the circumstances surrounding the information at the officer's disposal must be considered.").

██ Here, the confidential informant told Officer Rainwater he had previously purchased cocaine from two men who traveled to Columbia from Florida. The informant told Rainwater that he had dealt with the two men on several occasions when they had been in the Columbia area. The informant agreed to set up a "sting" operation in which these persons would deliver cocaine to him at a gas station. Rainwater met with the informant and listened as the informant telephoned his drug sources [1] and requested that they deliver the drugs to him. The informant told Rainwater the men would be driving a blue Cadillac with wire rims. Acting on this information, the police set up surveillance and waited for the men to arrive at the gas station. The officers observed a blue Cadillac with wire rims drive into the gas station. They watched as the informant approached the car and sat down in the back seat. The informant then immediately exited the vehicle. The informant's act of getting out of the car was the cue for the officers to move in based on the presence of drugs in the car. Based on these facts and observations, Rainwater and the other surveilling officers then moved in to arrest the car's occupants. After removing Dunbar from the passenger seat, Rainwater retrieved a bag of cocaine from the passenger-side floorboard.

The informant's description of the vehicle was corroborated when the informant approached the car immediately upon its arrival at the gas station. Moreover, Rainwater listened while the informant called to arrange the drug transaction. When

---

1. Rainwater testified he was unaware at the time of the telephone conversation whether the informant was speaking with the defendant, Dunbar, or with Jonathan Small.

viewed under the totality of the circumstances, the information provided by the informant, together with Rainwater's observations and verification of the information, was sufficient to give rise to probable cause that the occupants of the car were conducting a drug transaction, and that drugs could be found in the car. *See Moultrie*, 316 S.C. at 552, 451 S.E.2d at 37–38 (recognizing the validity of warrantless arrests based on an informant's tip where arresting officers conduct no independent investigation and corroboration consists of nothing more than observing predictions supplied by the tip); *cf. Roper*, 274 S.C. at 16–19, 260 S.E.2d at 706–707 (finding probable cause existed to stop an automobile matching a witness's description of two black males driving a late model, green Thunderbird with a red and white license tag bearing the letters "MVB" or "MVF"); *Peters*, 271 S.C. at 504, 248 S.E.2d at 478 (finding an informant's tip that a yellow Grand Prix with a white top and South Carolina tags bearing the digits "308" would be leaving Folly Beach shortly and transporting marijuana was sufficient to constitute probable cause to stop the vehicle).

Therefore, the warrantless arrest of Dunbar, as well as the search incident to Dunbar's arrest, was proper. The trial court did not err in refusing to suppress the cocaine found inside the car.

## II. Validity of Search Warrant

Dunbar argues the trial court erred in failing to suppress the evidence obtained as a result of the search of the hotel room. Dunbar contends the affidavit is deficient and cannot form the basis for a search warrant because the affiant admittedly had no direct knowledge of numerous facts recited in the affidavit.

After retrieving the cocaine from the vehicle, Officer Rainwater noticed a hotel room key on the key chain left in the car's ignition. The key was inscribed with a room number. Based on the confidential informant's previous dealings with Dunbar, he knew Dunbar stayed at a hotel while in Columbia. The informant had alerted Rainwater to this fact and told Rainwater to look for a hotel key. Upon being asked, Dunbar informed Rainwater that he and Small were staying at the Ramada Inn in West Columbia.

Based on the seizure of the cocaine and the information concerning the hotel room, Rainwater sought a warrant to search the room. Rainwater telephoned the magistrate and discussed the probable cause to issue the search warrant. Rainwater did not, however, proceed to the magistrate's office to obtain the warrant, but instead sent Officer O'Quinn.

When O'Quinn arrived at the magistrate's office the magistrate was on the telephone with Rainwater. O'Quinn testified the magistrate drafted the affidavit based on information received over the telephone from Rainwater.[2] O'Quinn stated he "merely signed" the affidavit after reviewing it and did not offer any information to the magistrate involving the probable cause for the search. O'Quinn admitted he had no "personal knowledge" of the facts contained in the affidavit other than an awareness that five ounces of cocaine had been delivered to undercover agents. O'Quinn was stationed in a marked patrol car during the surveillance of the gas station and testified that "it would not have been conducive for me to be within a line of sight of the suspects or where the deal was taking place." O'Quinn did not speak with the confidential informant nor with Dunbar, and was not present and did not observe Rainwater retrieve the cocaine from the car. There is no evidence the magistrate even inquired concerning O'Quinn's knowledge of the facts stated in the affidavit. O'Quinn stated the facts in the affidavit came from "no place else" but Rainwater. After signing the affidavit and obtaining the search warrant, O'Quinn delivered the warrant to the officers waiting at the hotel.

In *State v. Jones*, 342 S.C. 121, 536 S.E.2d 675 (2000), our Supreme Court stated the constitutional and statutory requirements for issuing a search warrant:

The General Assembly has imposed stricter requirements than federal law for issuing a search warrant. Both the Fourth Amendment of the United States Constitution and

---

2. The affidavit stated:

That a confidential informant stated that the subject stays at motel while in the area, that Co Def stated that the subject left Ramada Inn at I–26[at] 378 after Co–Def called subject in that room, that Co Def saw subject leave location to pick him up at location across from Ramada, that subject had on his possession a key to said room, that subject delivered approx. 5oz. of cocaine to undercover agents.

Article I, § 10 of the South Carolina Constitution require an oath or affirmation before probable cause can be found by an officer of the court, and a search warrant issued. U.S. Const. amend. IV; S.C. Const. art. I, § 10. Additionally, the South Carolina Code mandates that a search warrant "shall be issued only upon affidavit sworn to before the magistrate, municipal judicial officer, or judge of a court of record. . . ." S.C.Code Ann. § 17–13–140 (1985).

*Id.* at 128, 536 S.E.2d at 678.

"An affidavit is a voluntary *ex parte* statement reduced to writing and sworn to or affirmed before some person legally authorized to administer an oath or affirmation." *State v. McKnight,* 291 S.C. 110, 113, 352 S.E.2d 471, 472 (1987); *see also Black's Law Dictionary* 58 (7th ed.1999) (defining an affidavit as a "voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths").

■ In *McKnight,* our Supreme Court found a warrant defective where a sworn officer orally recited facts upon which the warrant was based but never executed an affidavit.[3] The Supreme Court found that such a sworn, oral statement may be sufficient to satisfy constitutional requirements, but the statement would not satisfy the statutory requirement of an affidavit. *McKnight,* 291 S.C. at 113, 352 S.E.2d at 472. *McKnight* required an affiant to execute a written affidavit. Similarly, in this case Officer Rainwater orally recited facts relating to the probable cause for the warrant but did not

3. The record does not indicate Rainwater was sworn. The magistrate placed O'Quinn under oath before he signed the affidavit. However, O'Quinn was unaware whether Rainwater was under oath during the telephone conversation with the magistrate. *See State v. York,* 250 S.C. 30, 156 S.E.2d 326 (1967) (finding a sheriff's testimony that he had a "conversation" with a magistrate was insufficient to establish that the sheriff furnished information under oath or affirmation). Assuming, as we must, given the lack of evidence on this point in the record, the magistrate did not place Rainwater under oath, the search warrant issued in this case offends even the less stringent constitutional standard requiring a search warrant be "supported by oath or affirmation." U.S. Const. amend. IV; S.C. Const. art. I, § 10; *see also State v. Wimbush,* 9 S.C. 309 (1877) (finding a warrant illegal where the information on which the warrant was founded was not given upon oath).

execute an affidavit. Instead, Rainwater sent O'Quinn to sign an affidavit drafted by the magistrate.

■ Under these facts, the statutory mandate requiring that a search warrant be based on an affidavit was not met because the affiant did not recite any of the facts stated in the affidavit and his direct personal knowledge of the facts stated in the affidavit was limited to the delivery of cocaine. The affiant, O'Quinn, did not prepare an affidavit and the magistrate's recitation of the facts in the affidavit was not verified by anyone known by the magistrate to possess knowledge of the facts stated in the affidavit. Because O'Quinn had no direct personal knowledge of numerous facts, he could not have sworn to the truth of the statements in the affidavit. At oral argument, the State explained O'Quinn was swearing that he *believed* the statements in the affidavit were truthful. The statutory affidavit requirement is not met where one officer recites facts over the phone to a magistrate, the magistrate drafts an affidavit, and subsequently an affiant who offers no facts establishing probable cause signs the affidavit. In essence, like *McKnight*, the magistrate was never presented with an affidavit executed by the affiant.

This opinion in no way affects the validity of search warrants issued through the use of hearsay. *See, e.g., State v. Sullivan*, 267 S.C. 610, 230 S.E.2d 621 (1976) (recognizing the validity of an affiant attesting to information supplied him by a fellow officer). Here, there is no evidence O'Quinn repeated to the magistrate any facts he may have obtained from other officers. The dissent characterizes this as a hearsay case and upholds the validity of the warrant based in part on O'Quinn's hearsay knowledge. Even assuming in this case O'Quinn obtained knowledge as a result of hearsay, it is of no consequence given O'Quinn did not relate any of this information to the magistrate and did not present an affidavit.

As the dissent correctly notes, an affidavit can show probable cause even when based on hearsay. *Sullivan*, 267 S.C. at 614, 230 S.E.2d at 623. However, any probable cause established in the affidavit here is not based on hearsay, it is based on oral statements by an officer who did not present an affidavit.

▇▇▇▇ A search warrant affidavit insufficient in itself to establish probable cause may be supplemented by sworn oral testimony. *Jones,* 342 S.C. at 128, 536 S.E.2d at 678–679; *McKnight,* 291 S.C. at 113, 352 S.E.2d at 472. "However, sworn oral testimony, standing alone, does not satisfy the statute." *Id.* at 113, 352 S.E.2d at 473. Even if Rainwater's telephone conversation with the magistrate was under oath, Rainwater presented only sworn oral testimony, not an affidavit. The rule allowing supplementation presupposes an affiant presented the magistrate with a written affidavit. If not presented with an affidavit, the magistrate is left to depend totally on oral information. A magistrate cannot depend solely on oral testimony in issuing a search warrant. Here, Rainwater's oral statements to the magistrate did not *supplement* an affidavit. Rather, the magistrate used the statements to draft the affidavit subsequently signed by an affiant who did not supply the magistrate with any facts. This procedure did not satisfy section 17–13–140.

Accordingly, the trial court erred in refusing to suppress the evidence obtained during the search of the hotel room.

## CONCLUSION

The trial court properly admitted the cocaine found in the car into evidence and we thus affirm Dunbar's conviction for trafficking in cocaine of more than one hundred but less than two hundred grams of cocaine. The trial court erred in refusing to suppress the powder and crack cocaine found in the hotel room and we therefore reverse Dunbar's convictions for trafficking in cocaine of more than 200 grams and less than 400 grams, and trafficking in crack cocaine.

**AFFIRMED IN PART AND REVERSED IN PART.**

STILWELL, J. concurs and ANDERSON, J. dissents in a separate opinion.

ANDERSON, J. (dissenting):

I respectfully dissent. The majority concludes the trial court erred in failing to suppress the evidence obtained as a result of the search of the motel room because the search warrant was based on an affidavit signed by a law enforce-

ment officer who had no direct knowledge of the information contained in the affidavit. I disagree. I vote to affirm.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Wilson,* 345 S.C. 1, 545 S.E.2d 827 (2001). We are bound by the trial court's factual findings unless they are clearly erroneous. *State v. Quattlebaum,* 338 S.C. 441, 527 S.E.2d 105 (2000). This same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases. *Wilson,* 345 S.C. at 6, 545 S.E.2d at 829. On review, we are limited to determining whether the trial judge abused his discretion. *State v. Reed,* 332 S.C. 35, 503 S.E.2d 747 (1998); *State v. Rochester,* 301 S.C. 196, 391 S.E.2d 244 (1990). This Court does not reevaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence. *Wilson,* 345 S.C. at 6, 545 S.E.2d at 829; *see also State v. Corey D.,* 339 S.C. 107, 529 S.E.2d 20 (2000) (an abuse of discretion is a conclusion with no reasonable factual support).

An appellate court reviewing the decision to issue a search warrant should decide whether the magistrate had a substantial basis for concluding probable cause existed. *State v. King,* 349 S.C. 142, 561 S.E.2d 640 (Ct.App.2002). This review, like the determination by the magistrate, is governed by the "totality of the circumstances" test. *State v. Jones,* 342 S.C. 121, 536 S.E.2d 675 (2000); *King,* 349 S.C. at 148, 561 S.E.2d at 643. The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The appellate court should give great deference to a magistrate's determination of probable cause. *State v. Weston,* 329 S.C. 287, 494 S.E.2d 801 (1997); *see also State v. Sullivan,* 267 S.C. 610, 230 S.E.2d 621 (1976) (magistrate's determination of probable cause should be paid great deference by reviewing court).

## LAW/ANALYSIS

### I. Requirement of Sworn Affidavit

"Both the Fourth Amendment of the United States Constitution and Article I, § 10 of the South Carolina Constitution require an oath or affirmation before probable cause can be found by an officer of the court, and a search warrant issued." *State v. Jones*, 342 S.C. 121, 128, 536 S.E.2d 675, 678 (2000). Furthermore, the South Carolina Code mandates that a search warrant shall be issued only upon affidavit sworn to before the magistrate, municipal judicial officer, or judge of a court of record establishing the grounds for the warrant. *Id.*; S.C.Code Ann. § 17–13–140 (1985). The purpose of the statute requiring that a warrant be issued only upon affidavit is to provide for timely recording of facts presented to a judicial officer. *State v. Sachs*, 264 S.C. 541, 216 S.E.2d 501 (1975).

### II. Sufficiency of Affidavit Supporting Search Warrant

An affidavit in support of a search warrant may be based on hearsay information and need not reflect the direct personal observations of the affiant. *State v. Sullivan*, 267 S.C. 610, 230 S.E.2d 621 (1976); *see also Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) (affidavit for search warrant which sets out personal observations relating to existence of cause to search is not to be deemed insufficient by virtue of fact that it sets out not the affiant's observations but those of another, so long as a substantial basis for crediting the hearsay is presented). An affidavit can show probable cause even when based on hearsay statements. *Sullivan*, 267 S.C. at 614, 230 S.E.2d at 623; *see also Morris v. State*, 62 S.W.3d 817 (Tex.App.2001) (information with which magistrate is supplied, in affidavit for search warrant, may be hearsay).

Hearsay, even second hearsay, may provide a legal basis for a search warrant. *United States v. Welebir*, 498 F.2d 346 (4th Cir.1974); *see also State v. York*, 250 S.C. 30, 156 S.E.2d 326 (1967) (affidavit for search warrant may be based on hearsay information); *State v. Elkhill*, 715 So.2d 327 (Fla.Dist.Ct.App. 1998) (finding affidavit established probable cause to search defendant's residence for drugs, even though affiant did not

continuously observe confidential informant during controlled buy; informant was under almost constant supervision of one of two officers during buy, and what affiant did not see, the other officer did; as long as specific facts are set forth to justify finding of probable cause to issue search warrant, those facts may be based on hearsay information).

The fact that the information provided is double hearsay is relevant to its value in determining probable cause, but hearsay testimony will not per se invalidate a judge's determination of probable cause. *State v. Taylor,* 82 Ohio App.3d 434, 612 N.E.2d 728 (1992). The fact that the affiant's knowledge may be the result of double or multiple levels of hearsay does not, per se, invalidate the resulting search warrant. *United States v. Jenkins,* 525 F.2d 819 (6th Cir.1975); *see also United States v. One Hundred Forty–Nine Thousand Four Hundred Forty–Two and 43/100 Dollars ($149,442.43) in U.S. Currency,* 965 F.2d 868 (10th Cir.1992) (hearsay, even multiple hearsay, may be used to establish probable cause for a search warrant); *United States v. McCoy,* 478 F.2d 176 (10th Cir.1973) (fact that affidavit in support of search warrant contains some double hearsay and perhaps even a bit of triple hearsay does not in and of itself render the affidavit insufficient).

The fact that there is hearsay upon hearsay involved in a case, as far as the information upon which the affidavit is based, does not preclude a finding of probable cause. *Lewis v. State,* 234 Ga.App. 873, 508 S.E.2d 218 (1998); *see also Hennessy v. State,* 660 S.W.2d 87 (Tex.Crim.App.1983) (when viewing the affidavit, hearsay upon hearsay will support issuance of warrant as long as underlying circumstances indicate there is a substantial basis for crediting hearsay at each level).

### III.  Direct Knowledge of Affiant Officer Not Required

The propriety of an affiant attesting to information supplied him by a fellow officer has been judicially endorsed. *State v. Sullivan,* 267 S.C. 610, 230 S.E.2d 621 (1976). It is well settled that an affiant seeking a search warrant can base his information on information in turn supplied him by fellow officers. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *United States v. Welebir,* 498 F.2d 346 (4th Cir.1974). Observations by fellow law enforcement officers engaged in a common investigation with the search

warrant affiant are a reliable basis for a warrant applied for by one of their number. *Ventresca*, 380 U.S. at 111, 85 S.Ct. at 747, 13 L.Ed.2d at 690; *State v. Hage*, 568 N.W.2d 741 (N.D.1997). *See also United States v. Morales*, 238 F.3d 952 (8th Cir.2001) (probable cause may be based on collective knowledge of all law enforcement officers involved in an investigation and need not be based solely on information within knowledge of officer on scene if there is some degree of communication).

Probable cause is to be evaluated by the collective information of the police as reflected in the affidavit and is not limited to the firsthand knowledge of the officer who executes the affidavit. *State v. Stickelman*, 207 Neb. 429, 299 N.W.2d 520 (1980); *see also Iddings v. State*, 772 N.E.2d 1006 (Ind.Ct. App.2002) (probable cause for a search warrant may be based upon information known to the law enforcement organization as a whole). A police officer making the affidavit for issuance of a warrant may do so in reliance upon information reported to him by other officers in the performance of their duties. *State v. Pearson*, 356 N.C. 22, 566 S.E.2d 50 (2002).

It is not unusual for an affidavit of a law enforcement officer to contain hearsay information from another, which, in turn, is based on other information gathered by that person. *Sullivan*, 267 S.C. at 615, 230 S.E.2d at 623. Hence, when a magistrate receives an affidavit which contains hearsay upon hearsay, he need not categorically reject this double hearsay information. *Sullivan*, 267 S.C. at 615, 230 S.E.2d at 623. Rather, he is called upon to evaluate this information as well as all other information in the affidavit in order to determine whether it can be reasonably inferred that the information was gained in a reliable way. *Sullivan*, 267 S.C. at 615, 230 S.E.2d at 623–24.

## IV. Efficacy of Affidavit in Present Case

The affidavit in the present case clearly justified the issuance of the warrant. Officer Keith O'Quinn was "part of the initial responding units for the take-down of the operation" and was at the scene of the arrest. O'Quinn testified that he had "personal knowledge ... that a narcotics deal had been performed at the Exxon station on Bush River Road" and that two subjects had been arrested. Officer O'Quinn had knowl-

edge there was cocaine in the car. He declared that, "[b]ased on [his] conversation in dealing with Investigator Rainwater," he obtained a search warrant. O'Quinn signed an affidavit based on information which was obtained through a joint investigation. When asked "[w]as there a reason for the belief contained in the affidavit that there was cocaine in Sheraton (sic) room 158," Officer O'Quinn responded: "From the information that I gathered that was told to Investigator Rainwater by the C.I., yes, sir, there was." Moreover, although Officer Rainwater actually communicated the information to the magistrate, Officer O'Quinn read over and reviewed the affidavit for accuracy before he signed it.

I find the affidavit was properly executed. The affidavit included information Officer O'Quinn learned through his participation in the investigation, as well as hearsay information. Thus, the affidavit justified the issuance of the search warrant. Under the totality of the circumstances, the magistrate had a substantial basis for concluding probable cause existed. I would affirm the trial court's decision to allow the evidence obtained as a result of the search of the motel room.

## CONCLUSION

The opinion of the majority acknowledges the viability of the rule that hearsay is admissible to show probable cause. This declaration rings hollow because the majority opinion neglects to give any efficacy to the rule.

With etymological precision, the majority in cathartic verbiage concludes the rule should not be applied. The statement is made that the magistrate never heard the "hearsay." The record belies this averment.

The judicial embargo countenanced by the majority flies in the face of the universal rule of evidence allowing "hearsay, even second hearsay" to determine probable cause in the magisterial warrant scenario.

Without question, the appellate entity will "rue the day" of the "statutory affidavit deficiency" rule adopted in this case. This court-created albatross in search warrant proceedings is anathema to the law extant in the field of criminal law.

**I VOTE TO AFFIRM.**