603 S.E.2d 615

**The STATE, Respondent,**

v.

**Michael DUNBAR, Appellant.**

**No. 3866.**

Court of Appeals of South Carolina.

Submitted Feb. 9, 2004.

Decided Sept. 27, 2004.

Rehearing Denied Oct. 21, 2004.

---

242

Assistant Appellate Defender Tara Taggart, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Senior Assistant Attorney General N. Mark Rapoport, all of Columbia; and Solicitor Donald V. Myers, of Lexington, for Respondent.

CURETON, A.J.

Michael Dunbar was convicted of one count each of: trafficking in cocaine (100–200 grams), trafficking in cocaine (200–400 grams), and trafficking in crack cocaine (200–400 grams). He received an aggregate sentence of forty years imprisonment. Dunbar appealed, arguing the trial judge erred in refusing to suppress cocaine evidence found as a result of a warrantless search of a vehicle. He also argued the trial judge erred in failing to suppress evidence found as a result of the search warrant because it violated both federal and state

constitutions in that: (1) the affiant was not the person who provided the information; (2) the magistrate was not detached and neutral; and (3) there was no information in the affidavit that attested to the informant's reliability.

This court affirmed the trial judge's refusal to suppress the evidence obtained in the warrantless search of the vehicle. We reversed the trial judge's refusal to suppress the evidence obtained from the motel room as a result of a search warrant supported by a faulty affidavit. *State v. Dunbar,* 354 S.C. 479, 581 S.E.2d 840 (Ct.App.2003). Our supreme court vacated that portion of our opinion dealing with the search warrant and remanded for a determination of the issue based solely upon Dunbar's constitutional issues on appeal. *State v. Dunbar,* 356 S.C. 138, 587 S.E.2d 691 (2003). Upon remand, we reverse[1] the trial judge's refusal to suppress the evidence found in the motel pursuant to the search warrant and remand for a new trial.[2]

## FACTS

The Lexington County Sheriff's Department worked with a confidential informant to set up an undercover drug transaction.[3] The targets of the operation were Dunbar and his associate, Jonathan Small.[4] The informant arranged to purchase five ounces of cocaine from Dunbar and Small at a prearranged location. Deputies approached the car after the informant signaled that drugs were in the car. Small fled on foot and Dunbar remained in the passenger seat. Officers found a paper bag containing five ounces of cocaine on the floorboard of Small's car. After officers also found a motel

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. The portion of our prior opinion in which we upheld the trial judge's refusal to suppress evidence obtained as a result of a warrantless search of the car remains unaffected.

3. We recite the facts, as we understand them, from our reading of the record.

4. Dunbar's co-defendant is alternately referred to as "Small" and "Smalls" throughout the transcript.

key in the car, Dunbar told Officer Jerry Rainwater that he and Small were staying at the motel.

Officer Rainwater decided to obtain a search warrant for the motel room. Rainwater called the magistrate and discussed "the warrant and the probable cause over the telephone." However, Rainwater did not draft the search warrant nor go to the magistrate's office to sign the affidavit in support of the search warrant. Instead, Rainwater sent Officer Keith O'Quinn to obtain the search warrant. O'Quinn was part of Rainwater's investigative team but knew only that a drug deal had occurred and five ounces of cocaine had been found. He did not witness the search of Small's car, speak to Dunbar, or speak with the informant.

When O'Quinn arrived, the magistrate was talking on the telephone with Rainwater. O'Quinn did not relay any information in support of the search warrant to the magistrate. Instead, the magistrate drafted the search warrant based on information Rainwater relayed over the telephone. The search warrant contained the following language under the section entitled "Reason for Affiant's Belief that the Property Sought is on the Subject Premises:"

That a confidential informant stated that the subject stays at motel while in the area, that Co Def stated that the subject left Ramada Inn at I–26 @ 378 after Co–Def called subject in that room, that Co Def saw subject leave location to pick him up at location across from Ramada, that subject had on [sic] his possession a key to said room, that subject delivered approx 5 oz. of cocaine to undercover agents.

O'Quinn was sworn and signed as the affiant on the search warrant, even though he later testified that the only information he had was that five ounces of cocaine was discovered at the drug bust. He had no personal knowledge of the other facts in the affidavit. The magistrate issued the search warrant after O'Quinn signed as the affiant. Deputies discovered a bag of cocaine, a bag of crack cocaine, $3,795 in cash, two digital scales, and a handgun in the motel room.

At trial, Dunbar moved to suppress the evidence obtained as a result of the search warrant because it was issued in violation of the Fourth Amendment and the South Carolina Constitution. Dunbar argued the evidence seized in the motel

room should be suppressed because: (1) the search warrant was not issued by a neutral and detached magistrate; (2) the warrant lacked probable cause because it was signed by an affiant without personal knowledge and there was no indication the information was given under oath or affirmation; and (3) the credibility of the confidential informant was not established. The trial judge denied the motions, and Dunbar was convicted. Dunbar appealed.

## LAW/ANALYSIS

### A.

■ Dunbar argues the trial judge erred in denying his motion to suppress the search warrant because it was not based upon probable cause where the affiant had no personal knowledge of the case. We agree.

The Fourth Amendment to the United States Constitution and Article I, § 10 of the South Carolina Constitution protect citizens from unreasonable searches and seizures. Both state and federal constitutions provide that search warrants may not be issued except upon "probable cause, supported by oath or affirmation," and particularly describing the place to be searched and the persons or things to be seized. U.S. Const. amend. IV; S.C. Const. art. I, § 10; *see also State v. Weston*, 329 S.C. 287, 290, 494 S.E.2d 801, 802 (1997) ("A search warrant may issue only upon a finding of probable cause.").

■ "The magistrate's task in determining whether to issue a search warrant is to make a practical, common sense decision concerning whether, under the totality of the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in the particular place to be searched." *State v. Tench*, 353 S.C. 531, 534, 579 S.E.2d 314, 316 (2003) (citations omitted). A reviewing court should give substantial deference to a magistrate's determination of probable cause. *State v. Crane*, 296 S.C. 336, 339, 372 S.E.2d 587, 588 (1988) (citation omitted); *see State v. Pressley*, 288 S.C. 128, 131, 341 S.E.2d 626, 628 (1986) ("Determination of probable cause to search made by a neutral and detached magistrate is entitled to substantial deference.") (citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

Both federal and state constitutions require that the search warrant be issued upon probable cause supported by "oath or affirmation." An "oath" is a solemn pledge, swearing to a higher power, that one's statement is true and subjects one to penalties for perjury if the statement is false. *See Black's Law Dictionary* 1099 (7th ed.1999). An "affirmation" is a pledge that one's statement is true and subjects the person to the penalties of perjury, but does not require the swearing to a higher power. *Black's Law Dictionary* 59. Neither federal nor state constitutions proscribe a particular method to be used in obtaining an "oath or affirmation."

 A sworn oral statement may be sufficient to satisfy the "oath or affirmation" requirement of both federal and state constitutions. *See State v. McKnight,* 291 S.C. 110, 113, 352 S.E.2d 471, 472 (1987) (noting that a "sworn, oral statement may be sufficient to satisfy the requirement for oath or affirmation"); *see also U.S. v. Clyburn,* 806 F.Supp. 1247, 1249–50 (D.S.C.1992), *aff'd by* 24 F.3d 613 (4th Cir.1994) (noting that it is constitutionally permissible for a magistrate to consider unrecorded sworn oral testimony in determining whether probable cause exists to issue a search warrant). An affidavit, which would satisfy the stricter requirements for a finding of probable cause found in our state statute [5], also satisfies the minimal constitutional requirements that probable cause be supported by an "oath or affirmation." *See McKnight,* 291 S.C. at 113, 352 S.E.2d at 472 ("An affidavit is a voluntary *ex parte* statement reduced to writing and sworn to or affirmed before some person legally authorized to administer an oath or affirmation ... It differs from an oath in that an affidavit consists of statements of fact which is sworn to as the truth, while an oath is a pledge...."); *State v. White,* 275 S.C. 500, 502, 272 S.E.2d 800, 801 (1980) (holding that a search warrant issued upon affidavit or affirmation does not offend the Constitution); *State v. York,* 250 S.C. 30, 36–37, 156 S.E.2d

---

5. *See* S.C.Code Ann. § 17–13–140 (1985) (requiring that a search warrant only be issued "upon affidavit sworn to before the magistrate ... establishing the grounds for the warrant."); *see also State v. Jones,* 342 S.C. 121, 128, 536 S.E.2d 675, 678 (2000) (noting that the General Assembly has "imposed stricter requirements than federal law for issuing a search warrant ... the South Carolina Code mandates that a search warrant 'shall be issued only upon affidavit sworn to before the magistrate ....' ") (quoting S.C.Code Ann. § 17–13–140).

326, 329 (1967) (noting that an affidavit complies with the minimum constitutional standards for the issuance of a warrant upon probable cause supported by oath or affirmation). "Generally, affidavits must be made on the affiant's personal knowledge of the facts alleged in the petition. The affidavit must in some way show that the affiant is personally familiar with the facts so that he could personally testify as a witness." 3 Am.Jur.2d *Affidavits* § 14 (2002).

It is not disputed by the State that the affiant in this case, Officer O'Quinn, did not have any firsthand knowledge of the events leading to Dunbar's arrest. O'Quinn characterized his involvement as "merely" signing for the warrant, without speaking to either Dunbar or the confidential informant and without relaying any information to the magistrate himself. An affiant is by definition an individual who makes "a voluntary declaration of facts written down and sworn to" before the magistrate. *See Black's Law Dictionary* 58 (7th ed.1999) (defining "affiant" and "affidavit"). When O'Quinn signed the affidavit to the search warrant, he swore "that there is probable cause to believe that certain property subject to seizure" was located in the motel room. Because O'Quinn admitted he had no knowledge of the facts of this case, we hold he could not make such an oath. Thus, although O'Quinn was placed under "oath" when he signed the affidavit, he did not relay any information that would support probable cause.

Although sworn oral statements will comply with constitutional requirements that a search warrant be supported by "oath or affirmation," the defects in the search warrant in this case cannot be cured by Rainwater's oral statements to the magistrate. Rainwater testified that he "spoke with the judge about the warrant and the probable cause over the telephone." He did not testify that he was ever placed under oath, and there is no evidence in the record that he was under oath when speaking with the magistrate on the telephone. Because there is no evidence that the information was given under oath, the search warrant issued in this case offends the constitutional requirement that it be supported by "oath or affirmation." *See York*, 250 S.C. at 36, 156 S.E.2d at 328 (finding a sheriff's testimony that he had a "conversation" with a magistrate was insufficient to establish that the sheriff furnished information under oath or affirmation); *State v.*

*Wimbush,* 9 S.C. 309, 316 (1877) (finding a warrant illegal where the information on which the warrant was founded was not given upon oath).

▬▬ The State asserts, however, that there is no reversible error because an affiant may attest to information supplied to him by another officer. Certainly, magistrates can issue search warrants based upon hearsay information that is not a result of direct personal observations of the affiant. *See generally State v. Sullivan,* 267 S.C. 610, 614–15, 230 S.E.2d 621, 623 (1976) (finding a search warrant affidavit may be based on hearsay information). Probable cause for a search warrant can be supported by information given to the affiant by other officers. *U.S. v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

The law regarding using hearsay information to support probable cause for a search warrant is inapplicable in the present case. O'Quinn testified that the only facts he knew concerning the case was that five ounces of cocaine had been found in Small's car. This fact alone is insufficient to support probable cause to search the motel room. Also, there is no evidence in the record that O'Quinn had any knowledge, either from personal observation or from hearsay statements of Rainwater, regarding the other facts in the affidavit that would support probable cause to search the motel room. Further, there is no evidence O'Quinn relayed *any* information to the magistrate, much less whether he relayed information learned from Rainwater, before he signed the affidavit. Because there is no evidence O'Quinn relayed hearsay information to the magistrate before signing the affidavit, the State cannot avail itself of this hearsay exception.

Inasmuch as O'Quinn did not have any knowledge, either from personal observation or from hearsay, that would support the facts in the affidavit and the evidence does not show that Rainwater was placed under oath, the search warrant for the motel room lacked probable cause and the trial judge erred in denying Dunbar's motion to suppress.

## B.

▬▬ Dunbar argues the trial judge erred in failing to suppress the evidence obtained as a result of the search

warrant because the issuing magistrate was not neutral and detached. We agree.[6]

A search warrant may only be issued upon a finding of probable cause by a neutral and detached judge. *U.S. v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The Fourth Amendment requires that magistrates be impartial and severed from and disengaged from the activities of law enforcement such that independent judgment is not distorted. *Shadwick v. City of Tampa*, 407 U.S. 345, 350–51, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972). In reviewing an application for a search warrant, a magistrate must make an independent determination of probable cause and not serve as a "rubber stamp for the police." *Leon*, 468 U.S. at 914, 104 S.Ct. 3405. Further, a magistrate must not wholly abandon his or her judicial function and essentially perform a police function. *Lo–Ji Sales, Inc., v. New York*, 442 U.S. 319, 326–27, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979) (holding that a judge who issued a search warrant abandoned his judicial function and was not neutral and detached when he led police in search). "The nucleus of the neutrality requirement is that the issuing officer not be functioning in a capacity charged with the duty of investigating or prosecuting crimes." *State v. Sachs*, 264 S.C. 541, 553–54, 216 S.E.2d 501, 507 (1975).

The parties do not dispute that the magistrate was the party responsible for drafting the fact section of the affidavit. Though Officer Rainwater relayed certain facts, the magistrate himself filled in the facts in the affidavit. Despite O'Quinn's testimony that he believed the magistrate to be neutral and detached, there is no showing in the record that Rainwater's conversation with the magistrate was under oath or that the magistrate accurately transcribed their conversation. We do not know if the magistrate inadvertently interposed his own interpretation of the facts into the affidavit in support of the search warrant.

Certainly, this practice is one that should not be indulged in by magistrates. If the magistrate had merely drafted the

---

6. Although our finding that the search warrant lacked probable cause because the facts were not given under oath is sufficient grounds to reverse, we address the remaining issues out of an abundance of caution.

affidavit upon the sworn oral information of the affiant and then the affiant read over and signed the affidavit, the magistrate would have performed more of a clerical function and the question before us would not be nearly so troubling. *See U.S. v. Steed,* 465 F.2d 1310, 1315 (9th Cir.1972) (holding that no prejudice had been shown by the defendant where the Commissioner prepared and typed an affidavit including the information orally supplied to him by the affiant, after which the affidavit was read over by the affiant and signed and sworn to by him, because there was nothing in the record to suggest the affidavit included any allegation or fact not orally supplied to the Commissioner by the affiant); *see also Johnson v. U.S.,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (holding that assistance by the magistrate in preparing the affidavit did not detract from his neutrality, but demonstrated it, because the magistrate's duty is to require adequate factual details or underlying circumstances to support probable cause).

The magistrate's act of recording facts supplied to him by Rainwater was not merely a clerical function. Moreover, it was compounded by the lack of evidence that he ever placed Rainwater under oath or that he ever determined whether O'Quinn had any knowledge of the facts to which he was swearing. Because the magistrate interpreted the facts, as he believed them to be, and then summarily determined probable cause existed to issue a search warrant without further inquiry, we hold he abandoned his neutral and detached role and became actively involved in a function of law enforcement.

## C.

Dunbar next asserts the evidence obtained as a result of the search warrant should have been suppressed because the reliability of the confidential informant was not established, and thus, probable cause to issue the search warrant did not exist.[7] Inasmuch as we have found the search warrant lacked probable cause because it was not supported by information given under oath and because it was issued by a magistrate that was not neutral and detached, we decline to address the credibility issues.

---

7. At best, this argument is underdeveloped in Dunbar's brief.

## CONCLUSION

There is no indication that the information in support of the search warrant in this case was provided under oath. The person signing the affidavit had no knowledge of the facts alleged in the affidavit. The magistrate abandoned his neutral and detached role when he became involved in drafting the affidavit in support of the search warrant without placing the person providing the information under oath and without determining that the person signing the affidavit had knowledge of the facts. Accordingly, the trial judge erred in failing to suppress the evidence obtained as a result of the search warrant.

Based upon the foregoing, Dunbar's convictions and sentences resulting from the search of the motel room are reversed and the case is remanded for a new trial.

**REVERSED AND REMANDED.**

STILWELL, J., concurs and ANDERSON, J., dissents in a separate opinion.

ANDERSON, J. (dissenting):

I respectfully dissent. The majority concludes the trial court erred in failing to suppress the evidence obtained as a result of the search of the motel room because the search warrant was based on an affidavit signed by a law enforcement officer who had no direct knowledge of the information contained in the affidavit. I disagree. I vote to affirm.

### STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Wilson,* 345 S.C. 1, 545 S.E.2d 827 (2001). We are bound by the trial court's factual findings unless they are clearly erroneous. *State v. Quattlebaum,* 338 S.C. 441, 527 S.E.2d 105 (2000). This same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases. *Wilson,* 345 S.C. at 6, 545 S.E.2d at 829. On review, we are limited to determining whether the trial judge abused his discretion. *State v. Reed,* 332 S.C. 35, 503 S.E.2d 747 (1998); *State v. Rochester,* 301 S.C. 196, 391 S.E.2d 244 (1990). This Court does not re-

evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence. *Wilson*, 345 S.C. at 6, 545 S.E.2d at 829; *see also State v. Corey D.*, 339 S.C. 107, 529 S.E.2d 20 (2000) (an abuse of discretion is a conclusion with no reasonable factual support).

An appellate court reviewing the decision to issue a search warrant should decide whether the magistrate had a substantial basis for concluding probable cause existed. *State v. King*, 349 S.C. 142, 561 S.E.2d 640 (Ct.App.2002). This review, like the determination by the magistrate, is governed by the "totality of the circumstances" test. *State v. Jones*, 342 S.C. 121, 536 S.E.2d 675 (2000); *King*, 349 S.C. at 148, 561 S.E.2d at 643. The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The appellate court should give great deference to a magistrate's determination of probable cause. *State v. Weston*, 329 S.C. 287, 494 S.E.2d 801 (1997); *see also State v. Sullivan*, 267 S.C. 610, 230 S.E.2d 621 (1976) (magistrate's determination of probable cause should be paid great deference by reviewing court).

## *LAW/ANALYSIS*

### I. Requirement of Sworn Affidavit

"Both the Fourth Amendment of the United States Constitution and Article I, § 10 of the South Carolina Constitution require an oath or affirmation before probable cause can be found by an officer of the court, and a search warrant issued." *State v. Jones*, 342 S.C. 121, 128, 536 S.E.2d 675, 678 (2000). The Fourth Amendment to the United States Constitution elucidates:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, **supported by oath or**

**affirmation,** and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV (emphasis added). Article I, section 10 of the South Carolina Constitution edifies:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and unreasonable invasions of privacy shall not be violated, and no warrants shall issue but upon probable cause, **supported by oath or affirmation,** and particularly describing the place to be searched, the person or thing to be seized, and the information to be obtained.

S.C. Const. art. I, § 10 (emphasis added).

## II. Sufficiency of Affidavit Supporting Search Warrant

An affidavit in support of a search warrant may be based on hearsay information and need not reflect the direct personal observations of the affiant. *State v. Sullivan,* 267 S.C. 610, 230 S.E.2d 621 (1976); *see also Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *overruled on other grounds by United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) (affidavit for search warrant which sets out personal observations relating to existence of cause to search is not to be deemed insufficient by virtue of fact that it sets out not the affiant's observations but those of another, so long as a substantial basis for crediting the hearsay is presented). An affidavit can show probable cause even when based on hearsay statements. *Sullivan,* 267 S.C. at 614, 230 S.E.2d at 623; *see also Morris v. State,* 62 S.W.3d 817 (Tex.App.2001) (information with which magistrate is supplied, in affidavit for search warrant, may be hearsay).

Hearsay, even second hearsay, may provide a legal basis for a search warrant. *United States v. Welebir,* 498 F.2d 346 (4th Cir.1974); *see also State v. York,* 250 S.C. 30, 156 S.E.2d 326 (1967) (affidavit for search warrant may be based on hearsay information); *State v. Elkhill,* 715 So.2d 327 (Fla.Dist.Ct.App. 1998) (finding affidavit established probable cause to search defendant's residence for drugs, even though affiant did not continuously observe confidential informant during controlled buy; informant was under almost constant supervision of one of two officers during buy, and what affiant did not see, the

other officer did; as long as specific facts are set forth to justify finding of probable cause to issue search warrant, those facts may be based on hearsay information).

The fact that the information provided is double hearsay is relevant to its value in determining probable cause, but hearsay testimony will not per se invalidate a judge's determination of probable cause. *State v. Taylor*, 82 Ohio App.3d 434, 612 N.E.2d 728 (1992). The fact that the affiant's knowledge may be the result of double or multiple levels of hearsay does not, per se, invalidate the resulting search warrant. *United States v. Jenkins*, 525 F.2d 819 (6th Cir.1975); *see also United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two and 43/100 Dollars ($149,442.43) in U.S. Currency*, 965 F.2d 868 (10th Cir.1992) (hearsay, even multiple hearsay, may be used to establish probable cause for a search warrant); *United States v. McCoy*, 478 F.2d 176 (10th Cir.1973) (fact that affidavit in support of search warrant contains some double hearsay and perhaps even a bit of triple hearsay does not in and of itself render the affidavit insufficient).

The fact that there is hearsay upon hearsay involved in a case, as far as the information upon which the affidavit is based, does not preclude a finding of probable cause. *Lewis v. State*, 234 Ga.App. 873, 508 S.E.2d 218 (1998); *see also Hennessy v. State*, 660 S.W.2d 87 (Tex.Crim.App.1983) (when viewing the affidavit, hearsay upon hearsay will support issuance of warrant as long as underlying circumstances indicate there is a substantial basis for crediting hearsay at each level).

### III. Direct Knowledge of Affiant Officer Not Required

The propriety of an affiant attesting to information supplied him by a fellow officer has been judicially endorsed. *State v. Sullivan*, 267 S.C. 610, 230 S.E.2d 621 (1976). It is well settled that an affiant seeking a search warrant can base his information on information in turn supplied him by fellow officers. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *United States v. Welebir*, 498 F.2d 346 (4th Cir.1974). Observations by fellow law enforcement officers engaged in a common investigation with the search warrant affiant are a reliable basis for a warrant applied for by one of their number. *Ventresca*, 380 U.S. at 111, 85 S.Ct. at 747, 13 L.Ed.2d at 690; *State v. Hage*, 568 N.W.2d 741

(N.D.1997). *See also United States v. Morales,* 238 F.3d 952 (8th Cir.2001) (probable cause may be based on collective knowledge of all law enforcement officers involved in an investigation and need not be based solely on information within knowledge of officer on scene if there is some degree of communication).

Probable cause is to be evaluated by the collective information of the police as reflected in the affidavit and is not limited to the firsthand knowledge of the officer who executes the affidavit. *State v. Stickelman,* 207 Neb. 429, 299 N.W.2d 520 (1980); *see also Iddings v. State,* 772 N.E.2d 1006 (Ind.Ct. App.2002) (probable cause for a search warrant may be based upon information known to the law enforcement organization as a whole). A police officer making the affidavit for issuance of a warrant may do so in reliance upon information reported to him by other officers in the performance of their duties. *State v. Pearson,* 356 N.C. 22, 566 S.E.2d 50 (2002).

It is not unusual for an affidavit of a law enforcement officer to contain hearsay information from another, which, in turn, is based on other information gathered by that person. *Sullivan,* 267 S.C. at 615, 230 S.E.2d at 623. Hence, when a magistrate receives an affidavit which contains hearsay upon hearsay, he need not categorically reject this double hearsay information. *Sullivan,* 267 S.C. at 615, 230 S.E.2d at 623. Rather, he is called upon to evaluate this information as well as all other information in the affidavit in order to determine whether it can be reasonably inferred that the information was gained in a reliable way. *Sullivan,* 267 S.C. at 615, 230 S.E.2d at 623–24.

## IV. Efficacy of Affidavit in Present Case

The affidavit in the present case clearly justified the issuance of the warrant. Officer Keith O'Quinn was "part of the initial responding units for the take-down of the operation" and was at the scene of the arrest. O'Quinn testified that he had "personal knowledge ... that a narcotics deal had been performed at the Exxon station on Bush River Road" and that two subjects had been arrested. Officer O'Quinn had knowledge there was cocaine in the car. He declared that, "[b]ased on [his] conversation in dealing with Investigator Rainwater," he obtained a search warrant. O'Quinn signed an affidavit

based on information which was obtained through a joint investigation. When asked "[w]as there a reason for the belief contained in the affidavit that there was cocaine in Sheraton (sic) room 158," Officer O'Quinn responded: "From the information that I gathered that was told to Investigator Rainwater by the C.I., yes, sir, there was." Moreover, although Officer Rainwater actually communicated the information to the magistrate, Officer O'Quinn read over and reviewed the affidavit for accuracy before he signed it.

I find the affidavit was properly executed. The affidavit included information Officer O'Quinn learned through his participation in the investigation, as well as hearsay information. Thus, the affidavit justified the issuance of the search warrant. Under the totality of the circumstances, the magistrate had a substantial basis for concluding probable cause existed. I would affirm the trial court's decision to allow the evidence obtained as a result of the search of the motel room.

## CONCLUSION

The opinion of the majority acknowledges the viability of the rule that hearsay is admissible to show probable cause. This declaration rings hollow because the majority opinion neglects to give any efficacy to the rule.

With etymological precision, the majority in cathartic verbiage concludes the rule should not be applied. The statement is made that the magistrate never heard the "hearsay." The record belies this averment.

The judicial embargo countenanced by the majority flies in the face of the universal rule of evidence allowing "hearsay, even second hearsay" to determine probable cause in the magisterial warrant scenario.

Without question, the appellate entity will "rue the day" of the rule adopted in this case. This "court created albatross" in search warrant proceedings is anathema to the law extant in the field of criminal law.

**I VOTE TO AFFIRM.**