**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Marcus Bailey, Appellant.

Appellate Case No. 2013-001680

———————————

Appeal From Richland County
Robert E. Hood, Circuit Court Judge

———————————

Unpublished Opinion No. 2016-UP-068
Heard September 9, 2015 – Filed February 17, 2016

———————————

**AFFIRMED**

———————————

S. Jahue Moore and Stanley Lamont Myers, Sr., both of Moore Taylor Law Firm, P.A., of West Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General Melody Jane Brown, and Solicitor Daniel Edward Johnson, all of Columbia, for Respondent.

———————————

**PER CURIAM:** Marcus Bailey appeals his murder conviction, asserting the trial court erred in (1) admitting testimony of a cadaver dog handler, (2) failing to direct a verdict in his favor, (3) admitting the testimony of an inmate without permitting defense counsel to fully cross-examine the inmate concerning his pending criminal charges, (4) admitting character evidence of Bailey, (5) refusing to suppress or strike evidence gathered pursuant to a search warrant, and (6) admitting Bailey's statement into evidence. We affirm.

1.      We find no reversible error in the admission of the cadaver dog evidence. First, we find admission of this evidence was not prejudicial to Bailey in light of the other evidence presented by the State. "A trial court's decision to admit or exclude expert testimony will not be reversed absent a prejudicial abuse of discretion." *State v. White*, 382 S.C. 265, 269, 676 S.E.2d 684, 686 (2009). "There is no reversible error in the admission of evidence that is cumulative to other evidence properly admitted." *State v. Griffin*, 339 S.C. 74, 77-78, 528 S.E.2d 668, 670 (2000); *see also State v. Hill*, 409 S.C. 50, 57, 760 S.E.2d 802, 806 (2014) (holding admission of a letter into evidence did not amount to reversible error, as the evidence contained in the letter was merely cumulative to other evidence). Contrary to Bailey's arguments, the evidence showed the cadaver dog was trained to detect human cadaver scent, not simply to find dead human bodies. Investigators Lee, Bouknight, Mauldin, and Martin all testified, without objection, that they smelled the odor of a decomposing body in the laundry room area of the house. Thus, evidence that the cadaver dog detected the odor of decay from a cadaver in the home was merely cumulative to the testimony of the four officers who likewise detected an odor of decomposition in the house. Accordingly, we find no prejudicial error in the admission of the cadaver dog evidence.

Further, we find any possible error in the admission of the cadaver dog evidence was harmless.

> The key factor for determining whether a trial error constitutes reversible error is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. Whether an error is harmless depends on the circumstances of the particular case. No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case. Error is harmless when it could not reasonably have affected the result of the trial.

> Engaging in this harmless error analysis . . . our jurisprudence requires us not to question whether the State proved its case beyond a reasonable doubt, but whether beyond a reasonable doubt the trial error did not contribute to the guilty verdict.

*State v. Tapp*, 398 S.C. 376, 389-90, 728 S.E.2d 468, 475 (2012) (internal citations omitted).

Further, whether an error is deemed harmless depends on the particular facts of the case, and includes consideration of the following factors:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course the overall strength of the prosecution's case.

*State v. Mizzell*, 349 S.C. 326, 333, 563 S.E.2d 315, 318-19 (2002) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

In considering the materiality and prejudicial character of any error in relation to the entire case, we find, beyond a reasonable doubt, any possible error in the admission of the cadaver dog evidence did not contribute to the verdict obtained. On the whole, Deputy Pearrow's testimony concerning the cadaver dog was of limited importance. First, his testimony established that the cadaver dog alerted to the odor of decomposition inside the house, but the testimony of the four investigators likewise established the odor of decomposition was inside the house. Even if the officers' testimony in this regard was not specifically cumulative to the cadaver dog evidence that a dead body itself may have been within the home, their testimony at least corroborated that the scent of a decomposing body was found in the home, and it was similarly incriminating inasmuch as it showed the odor of a decomposing body was on a blanket located in a dryer in the home where Bailey had been staying. Additionally, Bailey was allowed extensive cross-examination of Deputy Pearrow, at which time he thoroughly and effectively challenged the deputy on his and the dog's qualifications, possible inconsistencies between his report and his testimony, and the value of his testimony based upon concerns of

contamination.  Further, the overall strength of the prosecution's case was very high.  Aside from the testimony of the officers concerning the smell of decomposition emanating from the blanket inside the dryer in the laundry room, evidence was presented that Bailey was living in Victim's home, driving Victim's car, and using Victim's financial cards for various purchases during the time Victim was uncharacteristically out of contact with friends, co-workers, neighbors, and family members.  Victim's body was discovered in the front yard of her home the morning after Bailey was informed Victim's mother would be given a key and was coming to the Victim's home that next day.  Bailey claimed to have seen Victim alive the day before she was found dead on the front lawn, which was impossible given the state of decomposition of her body.  When officers entered the home on the day Victim's body was discovered, they observed numerous odor eliminating products in the house and found an overwhelming smell of fragrances. Bailey admitted he had a disagreement with Victim on the evening of August 16, the last known contact Victim had with anyone other than Bailey.  Bailey complained to a friend that Victim was controlling and confided he had visions of taking Victim's life, stating his vision included suffocating Victim, which was encompassed in the cause of Victim's death attributed by the forensic pathologist. Finally, an inmate incarcerated with Bailey testified Bailey told him he strangled Victim as a result of an argument.  Based upon this other substantial evidence, we find, beyond a reasonable doubt, any possible error in admission of the cadaver dog evidence did not contribute to Bailey's guilty verdict and, therefore, would be harmless.

2.     We find no merit to Bailey's contention the trial court erred in failing to direct a verdict in his favor because the State failed to admit evidence Victim died by means of a homicide.

> The State must produce proof aliunde of the *corpus delicti* aside from the extrajudicial confession of the defendant.  In a murder trial, the *corpus delicti* consists of two elements: the death of a human being and the criminal act of another causing the death.  This Court has held that the *corpus delicti* of murder may be established by circumstantial evidence when it is the best evidence obtainable.  Furthermore, this Court has held that circumstantial evidence may be sufficient to establish the *corpus delicti* of murder even though the cause of death [cannot] be determined.

*Brown v. State*, 307 S.C. 465, 467-68, 415 S.E.2d 811, 812 (1992) (internal citations omitted). In *Brown*, the forensic pathologist testified at trial that she could not determine a cause of death and, although she found no evidence of foul play, she could not rule out strangulation. *Id.* at 467, 415 S.E.2d at 811. Our supreme court found, in light of the condition of the body and since strangulation was a possible cause of death, the case was properly submitted to the jury. *Id.* at 468, 415 S.E.2d at 812. Thus, the State is not required to present medical evidence establishing with certainty the cause of death of an alleged homicide victim. *See State v. Saltz*, 346 S.C. 114, 138, 551 S.E.2d 240, 253 (2001) (finding unavailing appellant's argument that certain facts cited in support of circumstantial evidence to establish the *corpus delicti* were equally consistent with death by accident or sudden illness, and concluding the trial court properly denied appellant's motion for a directed verdict). Indeed, our courts have determined, even when a body was never found, circumstantial evidence surrounding the person's disappearance was sufficient to survive a directed verdict motion. *See State v. Owens,* 293 S.C. 161, 167-68, 359 S.E.2d 275, 278 (1987) (holding circumstantial evidence of the victim's personal habits and relationships raised an inference that the victim's sudden disappearance was the result of death by a criminal act and was thus sufficient to establish the *corpus delicti* of murder or that the victim was dead by the criminal act of another). *Accord State v. Weston*, 367 S.C. 279, 293, 625 S.E.2d 641, 649 (2006) (holding, under *Owens*, the prosecution's presentation of evidence concerning the victim's habits, coupled with her mysterious disappearance and the fact that she had not been seen nor heard from for an extended period of time, were sufficient to establish the *corpus delicti* of murder and that, along with other evidence presented by the prosecution, warranted the denial of the appellant's motion for directed verdict).

Here, there was evidence as follows: Victim suddenly disappeared; Bailey told various individuals and the authorities he had seen Victim alive the day before she was found, which was an impossibility given her state of decomposition; Bailey complained to others of difficulties he was having in his relationship with Victim and admitted to the authorities the two had fought on the day of Victim's last known contact with others; Bailey discussed with a friend his visions of killing Victim by strangulation; Bailey spent the days during which Victim had lost contact with others driving Victim's car and using her financial cards; there was a clear attempt to cover up smells in Victim's home—where Bailey was staying—and the home was noted to be cool when officers entered; four different officers noted the smell of decomposition coming from the dryer inside the home; and other medical findings showed Victim's body was stored indoors some time, was put outside shortly before it was discovered, and was found in her front yard on the

morning after Bailey had been informed Victim's mother was going to get a key to the house and come over there the next day. Accordingly, there is ample evidence supporting the trial court's denial of his directed verdict motion.

3.      We find no error in the trial court's admission of inmate Walker's testimony and refusal to allow Bailey to cross-examine Walker as to his guilt or innocence on pending charges. Although a defendant has a right to meaningful cross-examination of an adverse witness, the trial court nonetheless retains wide latitude to impose reasonable limits on such cross-examination. *State v. Turner*, 373 S.C. 121, 130, 644 S.E.2d 693, 698 (2007).

> [R]eversal need not result from every limitation of permissible cross-examination and a witness' testimony may, in some cases, be used against a defendant, even though the witness invokes his privilege against self-incrimination during cross-examination. In determining whether the testimony of a witness who invokes the privilege against self-incrimination during cross-examination may be used against the defendant, a distinction must be drawn between cases in which the assertion of the privilege merely precludes inquiry into collateral matters which bear only on the credibility of the witness and those cases in which the assertion of the privilege prevents inquiry into matters about which the witness testified on direct examination. Where the privilege has been invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be used against him. On the other hand, if the witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice because the defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part.

*United States v. Cardillo*, 316 F.2d 606, 611 (2nd Cir. 1963) (internal citations omitted). Thus, "[q]uestions on cross-examination are collateral if they relate solely to the witness's credibility and bear no relation to the subject matter of the direct examination." *State v. Hill*, 382 S.C. 360, 367, 675 S.E.2d 764, 768 (Ct. App. 2009). Here, questions concerning Walker's guilt or innocence to unrelated

pending criminal charges were collateral to his direct testimony in this case, bearing no relation to the subject matter. Additionally, we note Walker's credibility was otherwise challenged before the jury through both direct and cross-examination.[1] We therefore find Walker's invoking of the privilege against self-incrimination did not prejudice Bailey, the trial court properly precluded inquiry into the collateral matters on cross-examination, and there was no error in the admission of Walker's direct testimony.

4.     We also find no error in the trial court's rulings concerning character evidence of Bailey. In particular, Bailey asserts the trial court erred in admitting (1) the testimony of witness Perkins that he was kicked out of the military on a bad conduct discharge and (2) the testimony of Captain Parker that he had a number of mental issues following his return from Iraq, including a threat made to himself and other soldiers.

As to Perkins' testimony, we first note Bailey does not argue on appeal that the trial court erred in denying his motion for mistrial. Rather, he asserts error in the admission of character evidence from Perkins, i.e., that Bailey "was kicked out of the military on a bad conduct discharge." However, it is clear from the record that the trial court did not sanction admission of this evidence. Rather, the trial court informed the jury the evidence was improper and struck it, instructing the jury to "disregard any testimony from Ms. Perkins in regard[] to a discharge from the Army." Additionally, the trial court instructed the jury that the parties had stipulated "Bailey was discharged from the United States Army in January of 2012, and that his term of service was characterized as general under honorable conditions." Bailey agreed to both of these instructions by the trial court and raised no objection when they were given. Accordingly, the trial court did not err in admitting Perkins' testimony in this regard, as it was struck by the trial court. *See State v. Parris*, 387 S.C. 460, 465, 692 S.E.2d 207, 209 (Ct. App. 2010) ("When

---

[1] Aside from his testimony concerning his pending charges for murder, attempted armed robbery, and armed robbery, Walker also acknowledged before the jury he intended to plead guilty to the unrelated murder charge. Further, Investigator Martin testified he was involved in an investigation in which Walker was charged with murder along with four other codefendants, and Investigator Martin indicated in that case Walker had "*told on himself*, and he told on the other four." (emphasis added). Accordingly, the jury was ultimately presented with evidence that Walker admitted some guilt in regard to the unrelated murder charge.

the defendant receives the relief requested from the trial court, there is no issue for the appellate court to decide."). Further, even if Bailey were challenging the denial of his mistrial motion on appeal, we would find no error. The trial court's explicit instruction to the jury to disregard Perkins' testimony in regard to Bailey's Army discharge and to not consider it for any purpose cured any possible error, and any prejudicial effect was minimal such that a mistrial would not have been warranted. *See State v. Herring*, 387 S.C. 201, 216, 692 S.E.2d 490, 498 (2009) (noting the granting of a motion for a mistrial is an extreme measure to be taken only when an incident is so grievous that the prejudicial effect can be removed in no other way, and a curative instruction to disregard the testimony is usually deemed to cure any alleged error).

In regard to Captain Parker's testimony, we find Bailey's appellate argument is not preserved. The record reflects some discussion developed off the record concerning Captain Parker's testimony, but when the trial court addressed it on the record, Bailey agreed he had no objection to Captain Parker's testimony. Sometime later in the trial, just before Captain Parker testified, trial counsel indicated he had not waived his objection and began to reference a discussion he had with Captain Parker during the break over the weekend, but never stated any basis for any objection to Captain Parker's testimony. Additionally, our review of the record indicates Bailey failed to make any contemporaneous objection before the jury to the testimony elicited by the State from Captain Parker, much less to the testimony concerning Bailey's mental issues and possible threats he made to himself or other soldiers. "An objection must be made on a specific ground." *State v. Stahlnecker*, 386 S.C. 609, 617, 690 S.E.2d 565, 570 (2010). "[A] general objection which does not specify the particular ground on which the objection is based is insufficient to preserve a question for review." *State v. Patterson*, 324 S.C. 5, 17, 482 S.E.2d 760, 766 (1997) (citations omitted) (alteration in original). Further, "[t]he burden is on appellant to provide a sufficient record for review." *State v. Williams*, 321 S.C. 455, 464 n.4, 469 S.E.2d 49, 54 n.4 (1996). Here, it is not only unclear what Bailey's specific objection was to Captain Parker's testimony, there is no indication in the record to which testimony, in particular, Bailey had an objection, much less that he objected to the testimony of Captain Parker he now complains of on appeal. At any rate, even assuming proper preservation of the argument, there was no error in the admission of the evidence inasmuch as Bailey opened the door to testimony concerning his military career. *See State v. Nelson*, 331 S.C. 1, 6, 501 S.E.2d 716, 718 (1998) ("In a criminal case, the State cannot attack the character of the defendant *unless the defendant first places his character in issue*.") (emphasis added); *State v. McEachern*, 399 S.C. 125, 137, 731 S.E.2d 604, 610 (Ct. App. 2012) ("It is firmly established that

otherwise inadmissible evidence may be properly admitted when opposing counsel opens the door to that evidence."). This rule is not limited to the introduction of evidence, but applies as well when a party opens the door to the admission of evidence by virtue of an opening statement. *See State v. Dunlap*, 353 S.C. 539, 541, 579 S.E.2d 318, 319 (2003) (holding a criminal defendant's opening statement, which created the impression he had no prior connection to the sale of narcotics, opened the door to the introduction of evidence rebutting the contention that the defendant was merely an addict).

5.     We find no merit to Bailey's contention the trial court abused its discretion in refusing to suppress or strike evidence gathered pursuant to the search warrant because it was based upon an affidavit of an officer with no personal knowledge of the facts. In particular, Bailey argues the search warrant was invalid because it was not based on personal knowledge, and a hearsay exception would not apply because there is no evidence the issuing magistrate was aware Investigator Mauldin, the affiant for the search warrant, was testifying upon hearsay. "Generally, affidavits must be made on the affiant's personal knowledge of the facts alleged in the petition. The affidavit must in some way show that the affiant is personally familiar with the facts so that he could personally testify as a witness." *State v. Dunbar*, 361 S.C. 240, 248, 603 S.E.2d 615, 619 (Ct. App. 2004) (quoting 3 Am. Jur. 2d *Affidavits* § 14 (2002)). It is permissible, however, for a magistrate to issue a search warrant based upon hearsay information that is not a result of direct personal observations of the affiant, and information given to the affiant by other officers can support probable cause for the search warrant. *Id.* at 249, 603 S.E.2d at 620. Unlike the affiant in *Dunbar*, it is clear the affiant here, Investigator Mauldin, was supplied with the information by other officers in support of the affidavit. Accordingly, the use of hearsay information from other officers by Investigator Mauldin to support probable cause for the search warrant was proper. *See id.* ("[M]agistrates can issue search warrants based upon hearsay information that is not a result of direct personal observations of the affiant" and "[p]robable cause for a search warrant can be supported by information given to the affiant by other officers."). Further, nothing in *Dunbar* suggests that an issuing magistrate must specifically be told that the affiant is basing his affidavit on hearsay when it is not based on personal knowledge, and Bailey cites no other law in support of such a position. At any rate, as the trial court properly observed, a fair reading of the affidavit reveals information that would indicate to the magistrate that Investigator Mauldin had obtained the information from other officers.

6.      Lastly, Bailey contends the trial court erred in admitting his statement because he was not provided with a copy of his statement at the time it was given. We find no error.

Section 8-15-50 of the South Carolina Code provides as follows:

> Whenever any person employed by the State, or any county, city or municipality thereof, or any part of any such governing body, shall take a written statement in any investigation of any kind or nature from any person, the person receiving or taking the written statement shall give to the person making the statement a copy thereof and shall obtain from the person making the statement a signed receipt for the copy so delivered.

S.C. Code Ann. § 8-15-50 (1986).  Section 19-1-90 provides, "Unless the provisions of Sections 8-15-50 and 19-1-80 have been complied with, no statement such as is referred to in those sections shall be admissible in evidence in any case, nor shall any reference be made to it in the trial of any case."  S.C. Code Ann. § 19-1-90 (2014).

In *State v. Butler*, 277 S.C. 452, 290 S.E.2d 1 (1982), *overruled in part on other grounds by State v. Torrence*, 305 S.C. 45, 69 n. 5, 406 S.E.2d 315, 329 n. 5 (1991), Butler asserted the trial court erroneously admitted two written confessions into evidence which violated sections 8-15-50 and 19-1-90 because a copy was not provided at the time the statements were made.  *Id.*  at 455, 290 S.E.2d at 3.  The failure to provide the copies was due to a malfunction of the copy machine at the police station; however, Butler was given a copy three weeks later, prior to the preliminary hearing and approximately four months before trial.  *Id.*  Our supreme court disagreed with Butler's assertion, refusing to apply the code sections "in a hypertechnical manner." *Id.*  The court found nothing in the record to indicate there was any prejudice to Butler's rights, noting he had ample time to prepare his case after he received a copy of his confession.  *Id.*  The court observed, "Appellant is due a fair trial, not a perfect one."  *Id.*

In *Bannister v. State*, 333 S.C. 298, 509 S.E.2d 807 (1998), Bannister was not provided with a copy of his statement until the very morning of trial.  *Id.* at 301, 509 S.E.2d at 808.  Nonetheless, our supreme court found trial counsel was not ineffective in failing to move to have the statement suppressed pursuant to the statutory requirement that he be provided a copy of his statement.  *Id.* at 304, 509

S.E.2d at 810.  The court found there was no evidence Bannister did not have adequate time to review the statement in preparation for trial, citing *Butler* for the proposition "as long as the witness has time to prepare for trial after receiving a copy of the written statement, the failure to provide the statement at the time it is made is not reversible error." *Id.*

We find this issue is controlled by *Butler* and *Bannister*, and because Bailey had ample time to prepare for trial after receiving a copy of his written statement, the failure to provide the statement at the time it was taken is not reversible error.  At any rate, we note these statutory provisions requiring copies of *written statements* would not apply to the oral statements made by Bailey at the hospital and, accordingly, there is not a similar objection to Investigator Clarke's testimony regarding Bailey's statements made at the hospital, including Bailey's timeline of last seeing Victim.  Thus, considering the evidence from his oral statements at the hospital, along with all the other substantial evidence properly admitted, we find any possible error in admission of the written statement did not contribute to Bailey's guilty verdict and therefore would have been harmless.

**AFFIRMED.**

**HUFF, A.C.J., and WILLIAMS and THOMAS, JJ., concur.**